UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

Walter F. Grenda, Jr. and
Maryann Grenda,                                             17-CV-537

    v.

United States Securities and Exchange
Commission,

    Respondent.
───────────────────────────────────────                     DECISION AND ORDER

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

Gregory M. Grenda,
                                                            17-CV-536
    v.

United States Securities and Exchange
Commission,

    Respondent.
───────────────────────────────────────


Walter F. Grenda, Jr. ("Walter") and his wife, Maryann Grenda ("Maryann"), commenced an action seeking to quash an investigative subpoena issued to them by the Securities and Exchange Commission (the "SEC"). Their son, Gregory Grenda ("Gregory"), commenced a separate action seeking to quash an SEC subpoena issued to him.[1] Both motions to quash are made pursuant to the customer challenge provision

---

[1] Although the parties are part of two separate cases—1:17-cv-00537 and 1:17-cv-00536—they are considered together.

of the Right to Financial Privacy Act of 1978, 12 U.S.C. Section 3401 ("RFPA"). The respondent, the SEC, opposes these motions, arguing that the bank records sought are related to legitimate law enforcement activity. For the reasons stated below, both motions to quash are denied.

## **BACKGROUND**[2]

In July 2015, Walter entered into a settlement with the SEC. Under the terms of the agreement, he was prohibited from associating with investment advisors for three years. *In the Matter of Reliance Financial Advisors LLC*, SEC Administrative Proceeding File No. 3-16311, http://www.sec.gov/litigation/admin/2015/33-9872.pdf. On August 16, 2016, the SEC issued a formal order of investigation, alleging that Walter may have violated the terms of the settlement agreement by engaging in investment-related activities.

Even before the settlement with the SEC, Walter and his son were involved in business activity together. In fact, when the SEC investigation was pending, what had started as Walter's business—Reliance Financial Advisors, LLC—was sold to Gregory and renamed the Grenda Group, LLC (the "Grenda Group"). The SEC alleges that after Walter was barred from participating in the Grenda Group, he continued to advise clients and that he represented himself as "Greg" in brokerage meetings. Consequently, the SEC issued subpoenas in an effort to uncover whether Walter

---

[2] All facts are drawn from the SEC's memoranda of opposition, verified by Kimberly A. Yuhas. *See* 1:17-cv-00537 Docket Items 7 and 7-1; 1:17-cv-00536 Docket Items 5 and 5-1.

received any money—salary or payments—from Grenda Group business transactions or otherwise participated in those transactions.

In part because Walter does not have a bank account in his name, the subpoena requested information regarding the bank accounts of his son and his wife—Gregory and Maryann. According to the SEC, there is evidence that Maryann's accounts were used for large business transactions, including payments to the SEC itself. Furthermore, Maryann is not an entirely independent third party, as she is currently employed by the Grenda Group as the receptionist. And Gregory's account was likewise subpoenaed to look for activity to, from, or on behalf of his father.

On June 14, 2017, the Grendas filed motions to quash the SEC subpoenas. Gregory concedes that the formal order issued on August 16, 2017, is a legitimate inquiry, but he challenges the relevance of the information requested by the subpoena. Maryann and Walter challenge both the legitimacy of the inquiry and the relevance of the information requested.

## **DISCUSSION**

**I.      STANDARD**

Under the RFPA, and specifically, 12 U.S.C. Section 3405, a government authority may subpoena financial records only if the records are "relevant to a legitimate law enforcement inquiry." In reviewing a challenge to an administrative subpoena, district courts may "undertake only an extremely limited inquiry." *N.L.R.B. v. Frederick Cowan & Co., Inc.*, 522 F.2d 26, 38 (2d Cir. 1975). The court must deny a challenge to a subpoena issued pursuant to the RFPA if the court "finds that . . . there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a

3

reasonable belief that the records sought are relevant to the inquiry." 12 U.S.C. § 3410(c); *see also Grafstrom v. SEC*, 532 F. Supp. 1023, 1025 (S.D.N.Y. 1982).

A court may quash an administrative subpoena if the target demonstrates that the subpoena was issued in bad faith—to harass, to pressure the person subject to investigation, or for some other "improper purposes." *SEC v. Brigadoon Scotch Distrib.*, 480 F.2d 1047, 1056 (2d Cir. 1973). But when the administrative agency is authorized by law to conduct the inquiry and the information subject to the subpoena is relevant to the inquiry, the bad faith burden is "not easily met". *Id.*

Moreover, the agency issuing the subpoena need not show that the records are relevant to a legitimate inquiry; rather, it need show only that there is a "reasonable belief that the records sought are relevant to that inquiry." *In re SEC*, 1990 WL 119321, at *2 (S.D.N.Y. Aug. 10, 1990) (quoting 12 U.S.C. § 3410(c)); *see also United States v. Wilson*, 571 F. Supp. 1417, 1420 (S.D.N.Y. 1983) ("[T]he RFPA requires only that financial information be relevant to a 'legitimate law enforcement inquiry,' and not relevant in a narrow, evidentiary sense."). And when the target of a subpoena is connected to activity that is the subject of a legitimate SEC investigation, the SEC has indeed shown the required reasonable belief. *See In re SEC*, 1990 WL 119321, at *2. Finally, when the scope of an SEC subpoena is challenged, as it is here, the fact "that the SEC has cast its net broadly and may obtain information that ultimately is not directly relevant," without more, is not a basis to quash or limit the subpoena. *See Feiner v. SEC*, 914 F. Supp. 2d 474, 479 (S.D.N.Y. 2012).

When third parties are implicated by the investigative measures, additional privacy rights are at stake. *In re McVane*, 44 F.3d 1127, 1138 (2d Cir. 1995). Although

4

individuals uninvolved in the matters subject to inquiry may have an expectation of privacy greater than that of those who are directly involved, even for those uninvolved individuals the shield is not impenetrable. *See id.* ("[A]dministrative subpoenas . . . which seek personal records of persons . . . whose connection to the investigation consists only of their family ties . . . must face more exacting scrutiny."). But to obtain information from third parties, the agency should articulate a need beyond mere relevancy. *Federal Election Comm'n v. Larouche Campaign*, 817 F.2d 233, 234 (2d Cir. 1987) (per curiam).

In light of these standards, the SEC subpoenas issued here survive the motions to quash.

## II. ANALYSIS

### A. Gregory's Bank Account

Gregory does not dispute that the inquiry into whether his father violated the settlement agreement is a legitimate one. Rather, the issue he raises is whether the information sought is relevant to that legitimate inquiry.

The SEC argues that the information it seeks is relevant because the alleged unlawful behavior stemmed from Walter's association with Gregory's business accounts. As such, the SEC reasons, Gregory's bank account statements may shed light on whether Walter was engaged in conduct that violates the terms of his bar. But Gregory questions the scope of the subpoena: he notes that it seeks records from prior to the time when Walter's bar was in place and that it requests information regarding small—and perhaps personal—transactions. The SEC replies that this information is relevant to help establish a baseline of transactions between the Grendas to determine

5

whether there may be repeating patterns, as well as to look for ways that the method of payments to Walter may have been changed or hidden after the bar. The SEC also notes that transactions under $500 may still involve compensation to Walter.

Because the SEC need only show that the information requested is reasonably related to a legitimate inquiry, the subpoena of Gregory's bank account passes muster. Gregory is connected to his father both by blood and by business relationship. Because his father's former company was sold to him—and because his father is barred from working in that company as he had done previously—Gregory is also connected to the activity under investigation. Records from shortly before—and then after—the bar was imposed may well illuminate whether there are payments and transactions that evidence violations of the SEC bar. *See In re SEC*, 1990 WL 119321, at *2. Moreover, there is no reason to believe that a series of smaller transactions were not used in place of one or a few larger ones, and therefore no reason to impose an arbitrary dollar limit on the material and information requested. *See Feiner*, 914 F. Supp. 2d at 479.

### B. Maryann's Bank Accounts

Maryann disputes both the legitimacy of the SEC inquiry and the relevance of the material requested.

Her first objection is easily disposed of: the inquiry is indeed legitimate. Walter was bound by a settlement he reached with the SEC precluding him from working in the business he once owned, and the SEC is investigating whether he violated that prohibition. That is a legitimate inquiry, plain and simple.

Moreover, the subpoena directed to Maryann is relevant as well. Unlike the subpoena targets in the cases cited by Maryann, she is not simply an uninvolved family

6

member.  Individuals with a mere familial connection are entitled to heightened privacy protection, but Maryann also is an employee of the organization that Walter formerly owned and through which he is suspected of continuing to do business in violation of the SEC bar.  *Cf. In re McVane*, 44 F.3d at 1138.  What is more, Walter does not have a bank account in his own name.  For that reason, and because the SEC claims to have evidence that Walter used Maryann's accounts in lieu of maintaining his own account, looking at his wife's accounts is both material and relevant to the legitimate inquiry.  *Cf. id.*  Finally, there is no evidence of, nor does Maryann even allege, bad faith on the part of the SEC.

Because Maryann is an employee of the organization at issue, because she is the wife of the investigation target who does not have a bank account of his own, and because the SEC claims to have evidence that her accounts have been used by her husband in lieu of having his own account, the subpoena of her bank accounts is relevant to a legitimate SEC investigation.

## **CONCLUSION**

For the reasons stated above, the plaintiffs' motions to quash are both denied.

SO ORDERED.

Dated:   September 14, 2017
         Buffalo, New York

                                    *s/Lawrence J. Vilardo*
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE